## THE BALTIMORE AND OHIO RAILROAD COMPANY vs. PETER F. LEAPLEY, and GRACE B. LEAPLEY.

*Carrier—Contributory negligence—Passenger jumping from Train by order of Conductor.*

A large woman, some five months advanced in pregnancy, having with her two children aged respectively two and five years, and several bundles, was a passenger on a railway train. On arriving at her destination, which was a regular stopping place, with the ordinary platform for the use of passengers, the train only slacked, and the conductor told her to "get off;" and upon her asking how, he replied "jump," and thereupon she did jump with the youngest child in her arms, and was injured. In an action against the railroad company to recover damages for the injury sustained, it was HELD:

That the plaintiff was not guilty of contributory negligence, and was entitled to recover.

APPEAL from the Circuit Court for Washington County.

This suit was brought by the appellees against the appellant to recover damages for injury sustained by the female appellee who was a passenger on the road of the defendant. The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered the two following prayers:

1. If the jury find that the plaintiff was a woman about four months advanced in pregnancy, and was, on the 16th day of February, 1884, travelling as a passenger on the train of the defendant from Washington to Tuscarora Station, with two children, one of them two years of age and the other about six years old, and a lot of packages, and had purchased a ticket for transportation to said station, and had been received as a passenger on a train

which regularly stopped at said station, and had delivered up her ticket to the conductor upon demand, and when the train reached said station, sufficient time was not allowed her to get off of the train on the platform or place provided for the safe exit of passengers, but was. carried on said train beyond the platform, and the train was stopped at a place where no platform or other means were provided for the exit of passengers, and the plaintiff was then and there told by the conductor or agent in the management of the train to get off, and did get off as directed, but as carefully and prudently as her then mental and physical condition enabled her to do, and in getting off was injured, then the plaintiff is entitled to recover, and in ascertaining the amount of damages to which the plaintiff is entitled, the jury are to consider the health and condition of the plaintiff before the injury as compared with her present condition, and the probable duration of her injury, and also the mental and physical suffering to which she was and is subjected by reason of the injury, and to allow such sum as will be a fair and just compensation for these.

2. That if the jury believe from the evidence in the cause that the plaintiff, on the 16th day of February, 1884, purchased of the defendant's agent in Washington, D. C., a ticket which entitled her to be carried in one of the defendant's passenger cars on its railroad from Washington, D. C., to Tuscarora, a station on the Metropolitan Branch of said railroad in Frederick County, Maryland, and that the defendant had provided a platform at said station of Tuscarora for the safety of its passengers in alighting from its cars, that when the train upon which the said plaintiff was a passenger approached the said station of Tuscarora it slackened its speed, and nearly stopped at said station, but that the said plaintiff was not allowed sufficient time and opportunity to get off said train on to said platform, and before giving the said

Balto. & Ohio Railroad Co. *vs.* Leapley.

plaintiff sufficient time to get off said train on to said platform, the said train moved on and went beyond said platform, and stopped at a point where the said defendant. had provided no platform, or other means for the said plaintiff to safely alight from its said cars, and that the defendant's conductor or agent told the said plaintiff to get off said cars at said point, and at the same time defendant's said conductor or agent used harsh and profane language in the presence and hearing of said plaintiff, and that the plaintiff was excited and alarmed by the use of said language, and upon being told by said conductor or agent to get off said train, the plaintiff asked him "how," and that the said conductor in answer thereto, replied "jump," and that laboring under said excitement and alarm, the plaintiff did then and there get off said train, and in so getting off was thereby injured in one of her limbs, that then the plaintiff is entitled to recover in this action; and in assessing the damages to be allowed the plaintiff, the jury are to consider the health and condition of the plaintiff before the injury complained of as compared with her present health and condition in consequence of said injury, and whether said injury is in its nature permanent, and also the mental and physical suffering to which she was and is subjected by reason of said injury, and to allow such damages as in their opinion will be a fair and just compensation for the injury which the plaintiff has sustained.

The defendant asked the following instructions:

1. That if the jury find that the defendant's cars passed the platform of the station where the plaintiff, Grace B. Leapley, a passenger, was to have gotten off, and stopped some distance beyond said platform, and the said plaintiff then and there voluntarily, and without any direction or command of any of the persons in charge of said train, got off the car with the assistance of the conductor and brakeman, and was not injured in thus getting off, the plaintiffs are not entitled to recover.

2. That if the jury find that the plaintiff, Grace B. Leapley, was a passenger, with two children and five packages, on the train of the defendant from Washington to Tuscarora, on February 16th, 1884, and that said train did not stop at Tuscarora, a regular station for said train, but did stop some distance from said station, and that she being a large woman, weighing from 175 to 200 pounds, and in a state of pregnancy for the period of about five months, (if the jury so find,) did leap or jump from said train with a child two years old and two packages in her arms, a distance of about three feet, unaided by any one, or without requesting any one to aid her, and in consequence of said leap or jump was injured, then such act was negligence on her part, and she is not entitled to recover in this action, although the jury may find that she was told to jump by the conductor of said train.

3. That if the jury find that the plaintiff, Grace B. Leapley, did, by her own negligence and want of care, contribute to the injury she received in getting off the train, and for which this suit is brought, (if the jury find that she was injured in getting off,) then she is not entitled to recover in this action, and their verdict must be for the defendant.

4. That if the jury find from the evidence that the plaintiff, Grace B. Leapley, was a passenger on the train of the defendant, on the 16th day of February, 1884, from Washington City, to a station called "Tuscarora," of which Eugene Hagan was the conductor; that when said train arrived at said station called "Tuscarora," it stopped, but before the said plaintiff had sufficient time with her children and packages to get off the car in which she was riding, the said train started, and was again stopped about one hundred feet or thereabout from the platform at said station, when she appeared upon the platform of the car for the purpose of getting off the car then and there, and without being brought back to

the platform of the station, if the jury so find, and that the said conductor and the brakeman of said train, at her instance, did assist her off the said car, and in doing so used all proper care and dilligence, then the plaintiffs are not entitled to recover, although the jury may find that she was injured in getting off.

The Court, (FULL BENCH,) granted the prayers of the plaintiffs, and the first prayer of the defendant which was conceded, and rejected its other prayers. The defendant excepted. The jury rendered a verdict for the plaintiffs, for $8500, and judgment was entered accordingly. The defendant appealed.

The cause was argued before MILLER, YELLOTT, STONE, and BRYAN, J.

*W. Irvine Cross,* for the appellant.

*Frederick J. Nelson,* for the appellees.

STONE, J., delivered the opinion of the Court.

Mrs. Leapley, the plaintiff, was a passenger on the road of the defendant, from Washington City to a place in Frederick County, called Tuscarora in February, 1884. She was a large woman, weighing from 175 to 200 pounds, and in a state of pregnancy for about five months, she had with her two children, aged respectively two and five years, and several bundles. She had duly paid her fare to Tuscarora, which was a regular stopping place for the train of defendant, and where there was the ordinary platform for the entrance and exit of passengers on the defendant's road.

The plaintiff gave evidence tending to show that the train on which she was a passenger, did not stop at the platform at Tuscarora, but only slacked, and did stop

about 300 feet from the platform. That the conductor used profane language, but not to her, and got off the car and told the plaintiff in a rough manner to "get off," and upon her asking him how, replied, "jump," and that thereupon she did jump with the youngest child in her arms. That the car step from which she jumped, was about three feet from the top of the rail, and that the ground was fifteen inches below the rail, so that according to her evidence the distance she jumped, was about four feet, three inches. She also gave evidence tending to show the injuries she received from the jump.

The defendant gave evidence, tending to show that the train did stop at Tuscarora, but not long enough for plaintiff to get off, but that the engineer mistaking a salutation made by the conductor to a friend for a signal to start, started off before plaintiff could get off the train. That the train was stopped as soon as it could be at the distance of about ninety feet from the platform, that Mrs. Leapley appeared upon the platform of the car with her children, and seemed very anxious to get off, and that she was assisted and lifted down with all possible care and gentleness, and that no profane language was used or anything said to wrong her. That the distance from the lowest step of the car to the ground was not more than about two and a half feet, and that plaintiff made no objection to getting off where she did—this is the defendant's evidence.

That the carriers of passengers are required to observe the *utmost care* is a question now so well settled, that it is not necessary to quote authorities. If the carrier is a corporation, their agents are required to use the same care. They (the agents) are presumed and required to have the ordinary senses, especially in so responsible a position as the conductor of a railroad train. They certainly are presumed and required to have the ordinary eye-sight so that they can distinguish between a man in the vigor of life, and a woman in a state of pregnancy,

and accompanied by young children. They are expected to have, and must have, in order to discharge their duty properly, judgment enough to know that what would be safe for the one would not be safe for the other.

Whether this care which the law requires, was observed, is the question in this case.

There is really no very important conflict of testimony. The woman bought a ticket from Washington to Tuscarora, a known station with the ordinary platform for the passengers to get on and off the cars by. This ticket gave her the right to be put off on that platform; whether the cars *slowed up*, but did not actually stop, or whether they did stop, but not long enough for the plaintiff to get off, is immaterial; the result is precisely the same.

By the act of the defendant, she could not get off at the place that her ticket contracted that she could get off. This failure of the railroad to put the plaintiff off on the usual platform provided for that purpose, and when no good reason existed why they did not do so, we think was an act of negligence on the part of the road, and if the plaintiff was injured thereby, and without fault on her part, she is entitled to recover.

But notwithstanding the improper conduct of the defendant, if the plaintiff by her own negligence and want of care contributed to the accident, she would not have been entitled to recover, and the defendant's third prayer should have been granted, had there been any evidence legally sufficient to support it. But we perceive none in the record. According to the defendant's evidence, the conductor took from her arms the young child, and the brakeman, a strong man, lifted the plaintiff down. There is certainly nothing in this, defendant's proof, showing the slightest want of care on the part of the plaintiff.

If we take her evidence, we find that she was told by the conductor to "jump off," and that she did so. In so doing she was only obeying the explicit orders of the

person in charge of the train, and to whom the safety of the passengers was committed. It would come with a very ill grace from the road to say to the passenger, you have been careless and negligent because you obeyed the order of my agent.

Whether we take the evidence of plaintiff or defendant, we find no element of contributory negligence, and the third prayer was properly refused for that reason.

The defendant's second prayer is based upon the hypothesis, that in obeying the order of the conductor, she committed an act of negligence, and what we have already said disposes of that prayer.

The fourth prayer of defendant is based upon another erroneous hypothesis. That prayer asks the Court to say substantially, that although the defendant did wrong in not stopping at the platform, if the conductor and brakeman helped her down as carefully as they could, then she cannot recover, although she was injured in so getting down. In other words, that if, *after* the defendant had been guilty of an inexcusable act of carelessness and negligence, it was guilty of no more negligence, it should be excused. The statement of the proposition carries its refutation with it. The plaintiff offered two prayers, which were granted. The first prayer is a full and correct statement of the law of the case and was properly granted.

We have heretofore said that the defendant was guilty of negligence in carrying the plaintiff beyond the platform, still if the plaintiff by her own negligence in getting off contributed to the injury, she could not recover. It was to meet that view of the case that the second prayer of plaintiff was offered, and we think properly granted by the Court. If without *any direction* from the conductor, the plaintiff had jumped from the car as detailed by her, it might well have been said that she had not used that due care which she was bound to use. But if she was

excited and alarmed by the language used by the conductor, although it was not addressed to her, and in that condition she was told by the conductor to jump and she did so, we have already said that such an act did not constitute contributory negligence, and it was therefore proper for the Court so to instruct the jury.

Seeing no error in the ruling, the judgment must be affirmed.

*Judgment affirmed.*

